UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-749-H

DEBORAH BENNETT and DEANIE BAKER                         PLAINTIFFS

V.

RADCLIFF POLICE DEPARTMENT, *et al.*                           DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Deborah Bennett and Deanie Baker, brought suit against Defendants, the Radcliff Police Department ("RPD"), Officer Christopher Thompson and unknown members of the RPD, arising from a series of incidents occurring on December 16, 2009. Defendants moved for summary judgment on all claims. The Court previously issued a Memorandum Opinion and Order on February 20, 2013, dismissing a number of Plaintiffs' claims (the "February Order"). ECF No. 39. In the February Order, the Court took Defendants' motion for summary judgment on the remaining claims under continued submission. The Court now addresses the motion as to the following remaining claims: state law claim for trespass against Defendants and § 1983 claim against Officer Thompson and the unknown members of the RPD in their individual capacities.[1] For the reasons that follow, the Court will grant Defendants' motion in part and deny it in part.

---

[1] The Court notes that in dismissing Plaintiffs' negligence claim in the February Order, the Court also impliedly dismissed Plaintiffs' gross negligence claim. For clarity's sake, the Court now reiterates that ruling, and therefore, Plaintiffs' claims for gross negligence are dismissed.

I.

The parties provide varying accounts of what took place on December 16, 2009.[2] The Court will relate the two versions of events sequentially.

A.

Plaintiffs relate the following story concerning two contested home visits by RPD officers.[3] In the first contested visit, taking place between 10:00 a.m. and 11:00 a.m., Officer Thompson arrived at Baker's home looking for Brandi Miller. *See* ECF No. 36, p.2. The RPD had received an arrest warrant for Ms. Miller from Meade County, and it was believed that Ms. Miller could be found at Baker's residence. Baker knew the visiting police officer to be Officer Thompson, because she had prior interactions with him. When Baker opened the door, Officer Thompson pushed Baker aside even though she did not grant him permission to enter, and he proceeded to search through the apartment. Officer Thompson saw Alicia Malone inside and asked for her identification. Discovering she was not Ms. Miller, he began questioning her about Ms. Miller. Officer Thompson then went into Baker's bedroom and discovered a bottle of medication on the bed. Baker had called the RPD earlier that morning to report stolen prescription medication. Officer Thompson inquired whether this was the missing medication, and Baker explained that it was not. She no longer took the medication Officer Thompson found, but was unsure of how to dispose of it. Officer Thompson then left the residence.[4]

---

[2] In their Memorandum in support of their motion to dismiss, Defendants at one point state that the events occurred on December 10, 2009. Because at no other point in Defendants' pleadings does it refer to the December 10, 2009 date, the Court construes this as a typographical error.

[3] Apparently, earlier in the morning of December 16, 2009, RPD officers visited Baker's apartment twice in response to a reported theft at the residence. Plaintiffs do not allege any unlawful conduct arising from these two visits.

[4] Baker contends she does not remember what happened after Officer Thompson left for a period, because she suffers from Post-Traumatic Stress Disorder and often goes into dissociative states in times of stress, and at this time, fell into a dissociated spell.

Regarding the second contested visit, Baker asserts that Officer Thompson, accompanied by an unknown officer, returned to Baker's home later that day between 5:00 p.m. and 7:00 p.m. Again, Officer Thompson, who was not permitted entry, pushed past Baker in search of Ms. Miller. Hearing someone speaking inside the bathroom, he asked Baker who else was in the apartment. Baker responded that her sister, Deborah Bennett, was taking a shower. Officer Thompson then asked Bennett who she was talking to, and Bennett responded that she was praying. He requested that she exit the bathroom. Despite her explaining to Thompson that she was not fully clothed, he demanded that she leave the bathroom. He searched inside the bathroom, while Bennett stood in the hallway for twenty to thirty minutes in a small towel that did not fully cover her backside. Officer Thompson, and the unidentified officer assisting him, then left. Bennett reported the incident to the RPD.

B.

RPD Captain Ralph Craig performed an internal investigation as a result of this report, and his findings comprise Defendants' view of the events. According to phone records and a recording of the phone call, Baker called the RPD specifically requesting to speak with Officer Thompson at approximately 10:44 a.m. that day. He was not available, so Baker asked to file a report regarding some stolen medication. The RPD assigned Sgt. Jeremy Davis to the call, and he arrived at Baker's residence within minutes. He asked Baker if she knew how the medication was stolen, who may have committed the crime, and what medicine was missing. Baker was unable to provide an affirmative answer to any of these questions.

Around 12:10 p.m., the RPD received a call from the Meade County Sherriff's office requesting that a unit search Baker's residence for Brandi Miller pursuant to a Meade Circuit Court bench warrant. At 12:24 p.m., Sgt. Davis was dispatched to the residence, and he arrived

3

at 12:37 p.m.[5] Baker permitted Sgt. Davis to enter her home, and he inquired into the whereabouts of Ms. Miller. Sgt. Davis heard another person in the house. He questioned the woman as to her identity, requested her identification, and ran her name and information. Determining she was not Brandi Miller, he called off his secondary officer from coming to the residence. Police records show that at 12:47 p.m., Sgt. Davis advised dispatch of his location and that he was also following up with a theft report from that morning. About this time, records also show he ran Alicia Malone's identification.

In his initial report about the visit, Sgt. Davis explained that when he questioned Baker about which of her medications was missing, she claimed all had been stolen. However, Sgt. Davis noticed a prescription medicine bottle in her bedroom, and asked her about it. She stated it was old medicine, and the two discussed the means of disposing of the bottle. According to police records, Sgt. Davis left Baker's residence at 12:55 p.m. At 12:58 p.m., Plaintiffs called the RPD, asking to speak with RPD Police Chief Jeffrey Cross to make a complaint, even though they could not identify the officer about whom they were complaining.

RPD records show that on December 16, 2009, Officer Thompson was on leave throughout the morning, and reported to work at 12:00 p.m. As evidenced by radio traffic and department records, at 12:53 p.m., Officer Thompson was actively engaged in an investigation at a location across town. According to Captain Craig's report, Officer Thompson was tending to matters concerning this investigation from noon until his shift ended around 6:00 p.m. Consequently, Officer Thompson argues that he did not visit the Baker residence at any time during his shift on December 16, 2009. Plaintiffs do not contest this part of Defendants' recitation of events, but use Officer Thompson's work hours as evidence to show that before

---

[5] Officer Jeremy Kirkpatrick was also dispatched to the scene. As the secondary officer, he never entered Baker's residence, and was not named as a party to this litigation.

noon and after 6:00 p.m., the two times when Plaintiffs contend Officer Thompson conducted the two visits at issue, he was not on duty and his whereabouts were not documented.

II.

Defendants move for summary judgment under Federal Rule of Civil Procedure 56, which grants summary dismissal of claims when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears "the burden of showing conclusively that no genuine issue of material fact exists." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). To overcome summary judgment, the nonmoving party "may not rest upon mere allegation or denials of [the movant's] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). The Court must make inferences drawn from the alleged facts in the light most favorable to the nonmoving party. *Id.*

The issue in this case is whether the evidence demonstrates a necessity to submit the remaining claims to a jury. *Anderson*, 477 U.S. at 251-52.

> The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case. The Plaintiff must present more than a mere scintilla of evidence in support of his position; the Plaintiff must present evidence on which the jury could reasonably find for Plaintiff.

*Emp'rs Ins. of Wausau v. Petroleum Specialties, Inc.,* 69 F.3d 98, 102 (6th Cir. 1995).[6]

---

[6] Plaintiffs intimate in their Response in opposition to Defendants' motion for summary judgment that they are entitled to summary judgment on their claims. As to those claims upon which Defendants' motion is successful,

5

III.

As an initial matter, Plaintiffs named unknown members of the RPD as defendants in this case, and asserted each claim against them. Federal courts do not favor naming unknown defendants, except when the plaintiff cannot name the defendants at the time of filing the complaint but may be able to identify them upon discovery. *Robinson v. Doe*, 2009 WL 650383, *2 (S.D. Ohio Mar. 10, 2009). Accordingly, the federal rules provide that

> [i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m). Since filing this case on December 5, 2010, and filing the proper summons with the Clerk of this Court on December 23, 2010, Plaintiffs have not attempted to amend their complaint to name the unknown members of the RPD, nor have they represented to the Court that they attempted to uncover the identities of the unknown RPD officers. The 120-day time limit has expired. Moreover, on the eve of trial, Plaintiffs have yet to serve the unknown officers. Accordingly, the Court must dismiss the unknown officers as defendants.

While dismissal pursuant to Rule 4(m) must be without prejudice, the Sixth Circuit has held that district courts can dismiss the claim with prejudice where the applicable statute of limitations would bar the party from re-filing the claim. *Petty v. Cnty. of Franklin, Ohio*, 478 F.3d 341, 346 n.3 (6th Cir. 2007); *see Sheffey v. City of Covington*, 2012 WL 28056, *9 (E.D. Ky. Jan. 5, 2012). The personal injury claims dismissed in the February Order would be time-barred upon re-filing. The same is true of the § 1983 claims.

> An action pursuant to § 1983 is subject to the forum state's statute of limitations for personal injury actions. *See Owens v. Okure*, 488 U.S. 235,

---

Plaintiffs' motion necessarily fails. The Court will address Plaintiffs' motion as to those claims surviving summary judgment later in this opinion.

> 250-51, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). For § 1983 actions originating in Kentucky, the appellate court had held that the applicable statute of limitations is one year. *Collard v. Ky. Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) ("Accordingly, we conclude that section 1983 actions in Kentucky are limited by the one-year statute of limitations found in section 413.140(1)(a).").

*Harper v. Jackson*, 2008 WL 4737434, *2 (W.D. Ky. Oct. 27, 2008); *see also Akins v. Elizabethtown Police Dep't*, 2009 WL 103529, *2 (W.D. Ky. Jan. 14, 2009).[7]

On the other hand, a five-year statute of limitations governs trespass claims in Kentucky. *See* Ky. Rev. Stat. Ann. § 430.120(4). Accordingly, the Court will dismiss each of Plaintiffs' claims against the unknown officer defendants with prejudice, except the for trespass claim, which will be dismissed without prejudice.

IV.

The Court left open the question of the Radcliff Police Department's sovereign immunity for state law claims, because the parties did not brief this inherently difficult area of the law. In *State v. Elizabethtown Police Department*, 2010 WL 1196913 (W.D. Ky. Mar. 23, 2010), this Court held that the Elizabethtown Police Department is not an entity subject to suit under federal law, and that the appropriate defendant is the City of Elizabethtown. However, the question is the applicability of the same principle as to state law claims against city police departments.

Kentucky's immunity regime recognizes that municipalities are not cloaked with sovereign immunity like the state or counties. *See Haney v. City of Lexington, Ky.*, 386 S.W.2d 738, 742 (Ky. 1964); *Gas Serv. Co., Inc. v. City of London*, 687 S.W.2d 144, 149 (Ky. 1985); *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001). According to the Kentucky Supreme Court, for municipalities, "the rule is liability—the exception is immunity." *Haney*, 386 S.W.2d at 742

---

[7] While the re-filing of the § 1983 claims would be time-barred under the applicable statute of limitations, Plaintiffs' § 1983 claim against Officer Thompson is not barred, because under federal law, the action likely commenced within one year.

(quoting *Holytz v. City of Milwaukee*, 115 N.W.2d 618, 625 (Wis. 1962)). The only exceptions to the abrogation of municipal immunity are for "the exercise of legislative or judicial or quasi-legislative or quasi-judicial functions." *Id.* While these opinions outline municipal liability, they do not establish whether city police departments, as departments within the municipal entities themselves, are endowed with the right to sue and be sued in their own name.

The parties provided no argument or case law on this particular issue. The Court can find no Kentucky decisions directly on point, largely because so few searchable cases name the city police department as the defendant. Generally, however, courts in other jurisdictions have said that "[a] municipal police department is a component of the municipality and, therefore, lacks the capacity to be sued." 64 C.J.S. *Municipal Corporations* § 2543 (2013); *see, e.g.*, *Harris v. Sutton*, 918 N.E.2d 181, 182 n.1 (Ohio Ct. App. 2009) ("As a department of the city of East Cleveland, the police department is not sui juris and cannot be sued as a separate entity. It is subsumed within any judgment relating to the city."); *Hyatt v. Anoka Police Dep't*, 700 N.W.2d 502, 505 (Minn. Ct. App. 2005) ("While a municipal corporation such as the city has the authority to sue and be sued, its departments have not been given that specific authority."). This view seems quite sensible.

City police departments are considered a part of the city for purposes of Kentucky municipal liability. Two sets of statutes evidence this fact: (1) the Claims Against Local Governments Act ("CALGA"), which is the statutory regime codifying Kentucky municipal liability, *see* KY. REV. STAT. ANN. § 65.200(3) (defining "local government" as "any city incorporated under the law of this Commonwealth, the offices and agencies thereof, any county government or fiscal court, any special district or special taxing district created or controlled by a local government."), and (2) Kentucky statutes conveying much authority over city police

8

departments to the city government, *see* KY. REV. STAT. ANN. § 95.015; KY. REV. STAT. ANN. § 83A.070; KY. REV. STAT. ANN. § 83A.130; KY. REV. STAT. ANN. § 83A.150. Moreover, Kentucky case law seems to treat police departments as mere divisions of the city government. *City of Covington v. Covington Lodge No. 1, Fraternal Order of Police*, 622 S.W.2d 221, 223 (Ky. 1981) ("It is clear from the statutes that the control of the police department is vested in the legislative bodies of cities." (citing Kentucky statutes, three of which have largely been replaced by the statutes cited above)); *cf. Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 51 (Ky. 2003) (holding that because the City of Louisville did not exercise control over the Louisville Water Company necessary to create an agency relationship, the Louisville Water Company did not fall within the definition of "local government" and CALGA did not apply to preclude an award of punitive damages).

For the foregoing reasons, the Court finds that where Kentucky law treats an entity as merely a department of the local government, it is the local government that should sue or be sued on behalf of that department. Accordingly, Plaintiffs should have sued the City of Radcliff, rather than the RPD, for recovery on its state and federal law claims. Because Plaintiffs sued the wrong party with regard to the state law trespass claims, Plaintiffs' trespass claim against the Radcliff Police Department is dismissed.

V.

The Court will next consider Plaintiffs' claims arising from a police visit to Baker's home alleged to have occurred between 10:00 a.m. and 11:00 a.m. on December 16, 2009 – the first contested visit. Plaintiffs contend that Officer Thompson arrived at Baker's residence at this time with the intention of finding Brandi Miller. According to Plaintiffs, during this visit, Officer Thompson found a bottle of prescription medication in Baker's bedroom, questioned her

about whether this medication was the same that Baker had reported stolen, and then discussed the disposal process for outdated and unused medication. However, this story does not comport with the evidence.

The evidence, as shown in unchallenged phone and dispatch records, Sgt. Davis' report, and Captain Craig's internal investigation report, proves a different set of facts. The RPD did not receive notice of the outstanding bench warrant for Brandi Miller until 12:10 p.m. Plaintiffs present no evidence and assert no allegations that the RPD knew of the warrant for Ms. Miller prior to this time. Therefore, a visit by any officer before 12:10 p.m. could not have been premised on a search for Ms. Miller. Yet, Plaintiffs unequivocally claim that during the first contested visit, the officer entered Baker's home under the pretense that he was searching for Ms. Miller. Indeed, Officer Thompson did not report for duty until 12:00 p.m., and therefore, it would be highly unlikely that he could have somehow divined the Miller warrant in order to investigate Baker's home hours before.

The record evidence clearly supports Defendants' sequencing of events: Sgt. Davis, not Officer Thompson, visited Baker's apartment around 12:30 p.m., in response to a 12:10 p.m. call from the Meade County Sheriff's Office concerning Ms. Miller. This is consistent with police and dispatch records, and with Sgt. Davis' report of his visit to Baker's residence. Sgt. Davis related the same conversation in his report that Baker alleges took place between her and Officer Thompson regarding the medication bottle in Baker's bedroom. Sgt. Davis also explained that he ran Alicia Malone's information at this time. Police records confirm that Sgt. Davis ran Malone's information around 12:47 p.m.

As further support, phone records indicate that Plaintiffs called Chief Cross to complain about the incident at 12:58 p.m. Plaintiffs argue that Baker called Chief Cross after the second

10

incident, but phone records refute this contention. Instead, the recorded timing of this call fully comports with the RPD police report's chronology of events. During the call, Plaintiffs could not identify the officers present, but, as Baker testified, she knew Officer Thompson from previous interactions. It was only later when the Plaintiffs named Officer Thompson. Plaintiffs do not contest the phone records. The Meade County call came in at 12:10 p.m., and Plaintiffs' call to report the incident came in at 12:58 p.m. Logically, it was only during this time that an RPD officer have visited Baker's apartment to investigate Ms. Miller.

Finally, the evidence shows that during this exact time, Officer Thompson was investigating another incident across town. Indeed, Plaintiffs do not contest this latter fact. Because Plaintiffs have failed to show any possible set of circumstances under which Officer Thompson trespassed upon Baker's property and illegally searched her home consistent with the demonstrable proof, a reasonable juror could not find that Officer Thompson trespassed or committed a Fourth Amendment violation against Plaintiffs during the first contested visit.

The Court recognizes that it is not the ultimate factfinder at this stage of the litigation, and indeed, has not engaged in ultimate fact finding. Rather, the Court is the arbiter of the summary judgment standard and gatekeeper of claims substantiated enough to warrant submission to a jury. The Court is required to give reasonable inferences and take facts in the light most favorable to the nonmovant, but even so, the Court is not required to give substance to implausible testimony in light of contemporary evidence that absolutely explains the relevant incidences.

This is not a case of the proverbial he-said-she-said. The only evidence supporting Plaintiffs' conception of events is their unsubstantiated account of the first contested visit, which is totally at odds with contemporaneous records. "The mere existence of a scintilla of evidence

in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. Here, Plaintiffs have failed to provide evidence on which the jury could find in their favor. It is plausible, or rather probable, that the RPD would not document the activities of an off-duty officer, but it is implausible, especially given the dearth of evidence supporting Plaintiffs' argument that the Captain Craig's internal investigation was a sham, that the RPD would document something that did not happen.

The Court finds that the evidence is so one-sided that Officer Thompson is entitled to prevail as a matter of law as to claims arising out of the first contested visit. Accordingly, Plaintiffs' claims for trespass and illegal search under the Fourth Amendment as against Officer Thompson are dismissed.

VI.

Finally, the Court considers Plaintiffs' allegations of events between 5:00 p.m. and 7:00 p.m. on the same day. Plaintiffs allege that Officer Thompson arrived at Baker's residence, shoved past Baker, and perhaps most egregiously, forced Bennett to stand nearly nude in the hallway, covered only by a towel that did not conceal her backside. Defendants provide no countervailing explanation of Officer Thompson's whereabouts at this time. In fact, Officer Thompson was off-duty starting at 6:00 p.m. Unlike the first contested visit, Defendants present no undisputed evidence that another officer made this visit, or that the visit took place along a different timeline than Plaintiffs allege. In fact, Defendant's best argument seems to be that the second contested incident did not even take place. Comparing that argument with Plaintiffs' testimony about the existence of an evening visit and the mandate that the Court view the facts in

the light most favorable to the Plaintiff, the Court finds that Plaintiffs' recitation of events is sufficient to create a genuine issue of material fact as to its occurrence.

A.

Plaintiffs advance a state law claim for trespass against Officer Thompson. "Kentucky law allows recovery under trespass in either of three instances: (1) the defendant was engaged in an extra-hazardous activity, (2) the defendant committed an intentional trespass or (3) the defendant committed a negligent trespass." *Rockwell Intern. Corp. v. Wilhite*, 143 S.W.3d 604, 619 (Ky. Ct. App. 2003). Plaintiffs contend that Officer Thompson intended to enter Baker's house, and did so without permission. ECF No. 1, ¶31.

Plaintiffs may recover for trespass where a person "enters or remains upon land in the possession of another without the possessor's consent." *Bradford v. Clifton*, 379 S.W.2d 249, 250 (Ky. 1964). Specific to intentional trespass, "[a]ny intended intrusion or encroachment which is not privileged is actionable without regard for the shortness of the period of the interference, or the absence of pecuniary harm." *Smith v. Carbide & Chems. Corp.*, 226 S.W.3d 52, 54 (Ky. 2007). Importantly, "in order to recover more than nominal damages, a property owner must prove 'actual injury'." *Id.* at 55 (quoting *Hughett v. Caldwell*, 230 S.W.2d 92, 95 (Ky. 1950)). Thus, "[w]hile negligent trespass requires a showing of harm, intentional trespass is actionable regardless of such a showing, although damages may only be nominal." *Lewis v. Ceralvo Holdings, LLC*, 2012 WL 32607, *4 (W.D. Ky. Jan. 6, 2012).

If Plaintiffs' version of events proves true, then Plaintiffs would satisfy the elements of intentional trespass: Officer Thompson entered Baker's residence without permission, and remained for a period. Upon these facts, Plaintiffs may not be able to show actual harm, but the

13

claim remains actionable nevertheless. Accordingly, Defendants' motion for summary judgment as to the state law trespass claim against Officer Thompson must be denied.

B.

Plaintiffs also allege that Officer Thompson violated their Fourth and Fourteenth Amendment rights by conducting an illegal search of Plaintiffs' home and person, and should be held liable under 42 U.S.C. § 1983.[8] Section 1983 permits individual recovery for certain violations of federal law, but requires "(1) state action that (2) deprived an individual of federal statutory or constitutional rights." *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).[9] If Plaintiffs are correct, Officer Thompson entered Baker's apartment under color of state law, wearing his RPD uniform, and engaged in conduct that violated Plaintiffs' Fourth Amendment rights.

The Fourth Amendment guarantees that "an officer may not search for a person named in an arrest warrant in a third-person's house, unless the officer has a search warrant, obtains consent, or faces exigent circumstances." *Turk v. Comerford*, 488 F. App'x 933, 941 (6th Cir. 2012). If he in fact conducted the second contested visit, Officer Thompson undoubtedly did not have a warrant to search Baker's residence. Moreover, Plaintiffs assert that Officer Thompson did not gain consent to enter the apartment. Accordingly, Officer Thompson must have relied on exigent circumstances as justification for entering Baker's home. Officer Thompson offers no such explanation of exigent circumstances, assumedly because he denies his presence there in the first place. Accordingly, viewing the facts in the light most favorable to Plaintiffs, Officer

---

[8] Plaintiffs present no argument that they are entitled to recovery directly under the Fourteenth Amendment. Rather, Plaintiffs ground their § 1983 claims upon the illegal search under the Fourth amendment. Accordingly, the Court infers that Plaintiffs cited the Fourteenth Amendment, because it applies the Fourth Amendment to states.

[9] Atypical of many cases involving § 1983 claims, Defendants do not argue that qualified immunity shields Officer Thompson from liability in this situation, choosing instead to focus on the alleged fact that Officer Thompson altogether never visited Baker's apartment on December 16, 2009. Accordingly, the Court does not address the applicability of qualified immunity.

Thompson may have violated Baker's Fourth Amendment rights when he both entered Baker's apartment and conducted a search of the apartment on the evening of December 16, 2009.

Plaintiffs' allegations that Officer Thompson unlawfully stopped or searched Bennett when he apparently forced her to exit the bathroom in her towel are unclear at best. But the Court finds that Plaintiffs' contentions regarding Officer Thompson's conduct could very well present a Fourth Amendment violation. For these reasons, Plaintiffs' § 1983 claims survive summary judgment.[10]

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment as to Plaintiffs' claims against the Unknown Members of the Radcliff Police Department is SUSTAINED. Plaintiffs' trespass claim against the Unknown Members of the Radcliff Police Department is DISMISSED WITHOUT PREJUDICE. All remaining claims against the Unknown Members of the Radcliff Police Department are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment as to Plaintiffs' state law trespass claim against the Radcliff Police Department and Plaintiffs' claims arising from the first contested visit is SUSTAINED, and these claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment as to Plaintiffs' claims for trespass and under § 1983 for violations of Plaintiffs' Fourth Amendment rights arising from the second contested visit is DENIED.

---

[10] To the extent Plaintiffs assert motions for summary judgment as to these claims, the Court denies that motion, because Defendants have offered evidence sufficient to raise a genuine issue of material fact as to Officer Thompson's presence at Baker's residence on the date in question.

cc: Counsel of Record